UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODGERICK BOOTH,

                  Plaintiff,

v.

CAROL (CARRILL)[1] LOLL and
BURKE KELLER,

                  Defendants,

_____/

CASE NO. 05-CV-72905-DT
JUDGE ARTHUR J. TARNOW
MAGISTRATE JUDGE PAUL J. KOMIVES

**ORDER REGARDING DEFENDANTS KELLER'S AND LOLL'S
MOTIONS FOR SUMMARY JUDGMENT (Doc. Entries 32 and 33)**

Table of Contents

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    Instant Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    Fed. R. Civ. P. 56 ("Summary judgment") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    D.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.    Loll issued plaintiff two misconduct tickets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.    Loll does not challenge plaintiff's First Amendment retaliation claim. Plaintiff's
            remaining claim against Loll should be characterized as asserting a violation of the
            Fourteenth Amendment Due Process clause, and the Court should conclude that such
            claim does not survive summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        3.    Plaintiff's claim against Keller should be characterized as asserting a violation of the
            Fourteenth Amendment Due Process clause, and the Court should conclude that such
            claim does not survive summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        4.    Plaintiff has not stated a conspiracy claim under 42 U.S.C. § 1985. . . . . . . . . . . . . . . 27

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

_____

[1]At the time of the events giving rise to this complaint, Loll's last name was Carrill. Doc.
Ent. 32 at 2 n.1.

**I.      RECOMMENDATION:**  The Court should grant Keller's motion for summary

judgment (Doc. Ent. 32) and grant Loll's motion for summary judgment (Doc. Ent. 33), because

plaintiff's Fourteenth Amendment claims against them do not survive summary judgment.

However, plaintiff's First Amendment retaliation claim against Loll, which was not contested in

her motion for summary judgment, should not be dismissed.

**II.      REPORT:**

**A.      Background** [2]

Plaintiff is currently confined at the Michigan Department of Corrections [MDOC] Alger

Maximum Correctional Facility (LMF) in Munising, Michigan.[3]  His original complaint was

filed on July 25, 2005.  Doc. Ent. 1.  However, on July 29, 2005, Magistrate Judge Scheer

entered an order requiring plaintiff to submit a signed copy of his complaint to the Clerk of the

Court.  Doc. Ent. 3.

Plaintiff filed his first amended complaint on August 8, 2005, naming two Thumb

Correctional Facility (TCF) corrections officers as defendants.  Plaintiff lists First Amendment

retaliation and Fourteenth Amendment equal protection claims.  Doc. Ent. 4 at 1.[4]  He seeks

---

[2]Plaintiff originally filed a complaint in this Court against defendants Loll and Keller on December 15, 2004.  *Booth v. Carrill*, Case No. 04-CV-74871-GER-RSW.  On January 14, 2005, Judge Rosen entered an order dismissing the case without prejudice for failure to demonstrate exhaustion of administrative remedies.

Plaintiff was also a party to *Booth v. Corrigan*, Case No. 04-CV-73419-GCS-WC (record received from the Western District [Case No. 04-CV-00546-WAM-ESC] on September 2, 2004, and opinion and order of summary dismissal entered September 16, 2004) and *Booth v. Corrigan*, Case No. Case No. 05-CV-71675-GCS-SDP (filed April 28, 2005, and judgment entered March 8, 2006).

Plaintiff has also been a party to cases in the Western District.  Doc. Ent. 4 at 2 ¶ 5.

[3]*See* www.michigan/gov/corrections, "Offender Search".

[4]Plaintiff's unsigned March 23, 2006, amended complaint appears to amend ¶ 28 of the complaint.  Doc. Ent. 15.  Plaintiff's unsigned March 28, 2006, amended complaint appears to

injective relief,[5] as well as compensatory damages for emotional injuries and punitive damages. Doc. Ent. 4 at 6-7.[6] He proceeds pro se and in forma pauperis. Doc. Ent. 5.[7]

On March 24, 2006, defendants Loll and Keller filed an answer, affirmative defenses and a demand for trial by jury. Doc. Entries 11-13.[8] Additionally, they filed a motion to take plaintiff's deposition. Doc. Ent. 14. I entered an order granting this motion. Doc. 18.

On May 2, 2006, defendants filed a motion to revoke in forma pauperis status and dismiss without prejudice pursuant to the three-strike provision of 28 U.S.C. 1915(g). Doc. Ent. 20. On November 28, 2006, I entered a report recommending that the Court deny defendants' motion to revoke in forma pauperis status and dismiss without prejudice pursuant to 28 U.S.C. § 1915(g). Doc. Ent. 26. On January 29, 2007, Judge Tarnow entered an order adopting my report and recommendation and denying defendants' motion to revoke in forma pauperis status and dismiss without prejudice. Doc. Ent. 30.

**B.    Instant Motions**

---

amend ¶¶ 28 and 29 of the complaint. Doc. Ent. 17.

[5]Specifically, plaintiff requests immediate enforcement of MDOC PD 02.03.100 ["Employee Discipline"], attachment A of which lists discharge as a potential form of discipline for a first violation of falsifying or altering documents. MDOC PD 02.03.100A, effective July 9, 2007, No. 47. *See* Doc. Ent. 4 at 6 ¶ A1.

[6]Plaintiff alleges that "[t]he monetary damages and injunctive relief [he seeks] is necessary to compensate [him] for non-revers[i]ble damages and to further prevent misconduct by prison officers, and officials that erroneously violate prisoner's protected rights." Doc. Ent. 4 at 6 ¶ 31.

[7]On March 8, 2006, Judge Tarnow referred this case to me for all pretrial matters. Doc. Ent. 9.

[8]The waivers of service were sent to defendants on August 17, 2005, making their answer(s) due on or about October 17, 2005. Doc. Entries 7 and 8. Defense counsel's appearance was filed along with the answer on March 24, 2006. Doc. Ent. 10.

On April 5, 2007, I entered an order setting the discovery deadline for July 5, 2007, and the dispositive motion deadline for August 6, 2007. Doc. Ent. 31. On July 25, 2007, Keller filed a motion for summary judgment, arguing that "Prisoners are not members of a protected class. Booth has not alleged that Keller violated a fundamental right. Under rational basis scrutiny, Booth's claim against Keller should be dismissed." Doc. Ent. 32 at 4. On July 30, 2007, Loll filed a motion for summary judgment. Doc. Ent. 33 at 4. Each defendant seeks dismissal with prejudice of the claims against him or her. Doc. Ent. 32 at 5; Doc. Ent. 33 at 5.

On August 1, 2007, I entered an order setting the response time to Loll's dispositive motion for September 30, 2007. Doc. Ent. 34. On August 2, 2007, plaintiff filed a response to Keller's dispositive motion. Doc. Ent. 35. On August 7, 2007, he filed a response to Loll's dispositive motion. Doc. Ent. 36.[9]

## C.     Fed. R. Civ. P. 56 ("Summary judgment")

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

---

[9]Although plaintiff's August 2nd and 7th filings are labeled "motion[s] in opposition", they are construed as responses to defendants' motions for summary judgment. Doc. Ent. 35 at 1; Doc. Ent. 36 at 1.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis*, 542 P.2d 867, 872 (1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). "In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[10] "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would

---

[10]Plaintiff's July 25, 2005 complaint was not signed (Doc. Ent. 1 at 7); plaintiff's August 8, 2005, complaint was signed on August 2, 2005, but not under penalty of perjury (Doc. Ent. 4 at 7). Also, plaintiff did not sign the March 23, 2006 amendment of ¶ 28 of the complaint (Doc. Ent. 15) or the March 28, 2006 amendment of ¶¶ 28 and 29 of the complaint (Doc. Ent. 17). 25 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").

be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e).  *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (unpublished) (personal knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (unpublished) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the United States Supreme Courts stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).  The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a).  *Anderson*, 477 U.S. at 250. Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**D.**      **Analysis**

**1.**      **Loll issued plaintiff two misconduct tickets.**

On October 22, 2004, as plaintiff was leaving the shower to go to his cell, Loll said something to plaintiff and went to the "bubble."[11]  Doc. Ent. 32-4 at 3 (p.14).  Plaintiff waited for about fifteen (15) minutes "trying to get access to [hi]s cell and wasn't allowed to go in [his] cell."  Porters and other prisoners were out in the unit.  Doc. Ent. 32-4 at 3 (p.15).

Loll called plaintiff to the officer's desk to sign a "summary punishment."  Doc. Ent. 32-4 at 3 (p.17); Doc. Ent. 4 at 2-3 ¶ 11.[12]  Plaintiff refused to sign the summary, and Loll stated "she would write the plaintiff a misconduct report."  Doc. Ent. 4 at 3 ¶¶ 12, 13.  He told Loll that "if [she] fabricate[d] a misconduct on [plaintiff] . . . [he would] sue."  Doc. Ent. 32-4 at 3 (p.17).  Plaintiff requested a grievance form.  Doc. Ent. 4 at 3 ¶ 13.  That day, Loll issued plaintiff a minor misconduct violation for being temporarily out of place at 20:32 (8:32 p.m.).  Doc. Ent. 32-3.[13]  After a hearing, a Resident Unit Manager (RUM) found plaintiff guilty of the minor misconduct.  Doc. Ent. 32 at 2, Doc. Ent 32-4 at 4 (pgs.18-19), Doc. Ent. 33 at 2.

On October 23, 2004, plaintiff completed a Step I grievance against Loll regarding the issuance of the misconduct.  TCF-04-10-00950-027A.  Specifically, he stated:

> I am filing this grievance against C/O Carrill [Loll] for 'harassment' in violation of . . . [MDOC] P. D. 02.03.100 ["Employee Discipline"], and the 14th Amendment of the U. S. Constitution. . . .On [10-22-04], yard was called at 8:30 p.m., while I was in the shower[.] I immediately dried off, got fully clothed and went directly to my cell in under two minutes, and opened my door flap for the bubble officer to see the cell number.  C/O Carrill [Loll] told the bubble officer

---

[11]"The bubble is the control center for the housing unit where an officer can monitor activities in the housing unit."  Doc. Ent. 33 at 3.

[12]MDOC Policy Directive 03.03.105 ("Prisoner Discipline"), effective January 1, 2007, provides for the issuance of a Summary Disciplinary Action, ¶¶ D-E; a Minor Misconduct, ¶¶ F-J and a Major Misconduct, ¶¶ K-LL.

[13]During his April 28, 2006, deposition, plaintiff claimed he was not sure about the exact timing of this incident.  Doc. Ent. 32-4 at 3 (pgs.16-17).

not to open my door, so he continued to let other prisoners in while I continued to stand at my door.  C/O Carrill [Loll] called me down stairs after approximately 15-minutes and ask[ed] me to sign a summary.  I refused, and stated that I was being [harassed], because she told the officer not to open my door, and then wanted to punish me for missing my door.  She stated she would write a misconduct, and I stated I would sue her, and I was ordered to my cell.  I later received a misconduct for temporary out of place.

Doc. Ent. 32-5 at 2.[14]

On October 24, 2004, plaintiff started a job as a porter; however, his actual detail went into effect on October 25, 2004.[15]  On October 24, 2004, plaintiff "returned to Franklin unit from his job."  Doc. Ent. 33 at 3.  He came to the door to go to his cell and was confronted by Loll.  She did not ask to see plaintiff's detail.  Doc. Ent. 32-4 at 5 (p.26).  Keller was in the "bubble".  Doc. Ent. 32-4 at 5 (p.27).  Others witnessed the incident.  Doc. Ent. 32-4 at 5 (p.29).  Loll issued plaintiff a major misconduct for being out of place on or about 3:30 p.m.  Doc. Ent. 32 at 3, 32-4 at 20-21, 32-6 at 2, 33 at 3.  The ticket was written at 20:40 (8:40 p.m.).  Doc. Ent. 32-6 at 2.  The report indicates that Keller was a witness.  Doc. Ent. 32-6 at 2.  Loll described the violation as follows:

---

[14]TCF Grievance Coordinator Dennis Sergent rejected the grievance on October 26, 2004, because "[i]ssues surrounding the misconduct hearing process are non-grievable."  The response was reviewed that day by Deputy Warden Will Riley.  Doc. Ent. 32-5 at 3.  Plaintiff filed a Step II grievance appeal on October 28 or 29, 2004, stating:

My grievance was rejected without merit[.] [I]t is obvious that staff intends to cover the misconduct of c/o [Loll].  Although I did mention the misconduct I was written[,] I am clear[ly] grieving this officer's conduct.  This officer should find it appropriate to review, investigate, and take disciplinary actions for this conduct.

It appears that the Step II response was dated November 2004.  Plaintiff subsequently filed a Step III grievance appeal, stating, "[t]he issue has not been addressed; I grieved the conduct of the officer and not the misconduct."  Doc. Ent. 4 at 9.  The Step III grievance response is dated March 29, 2005.  Doc. Ent. 4 at 8.

[15]Plaintiff testified that he was issued an emergency detail.  Doc. Ent. 32-4 at 4 (pgs.20-21).

> At 1418 I made rounds on upper level. When I looked into Cell 68 Booth 188768 was not in his cell, or in the unit[.] [A]t 1530 Booth came walking in from the yard. Upper bunks had yard. Booth is lower bunk and had no authorization to be out of his unit or cell and on the yard. Booth . . . by daily contact and bubble . . . sheet.

Doc. Ent. 32-6 at 2. Keller was listed as a witness. Doc. Ent. 32-6 at 2; Doc. Ent. 4 at 4 ¶ 18.[16]

Keller's witness statement provides:

> On 10-24-04 I, Officer Keller[,] worked the pod in Franklin unit. At 1415 hr. FB upper bunks had yard only and were let out. Officer Carroll did a round and found that inmate Booth 188768 was not in his cell. Inmate Booth locks in FB-68 a lower bunk and should have been in his cell. This Officer (Keller) observed inmate Booth coming in with the yard at 1530 hr. Inmate Booth had no cell out and should have been in his cell not on the Level IV yard.

Doc. Ent. 32-7.

"On October 25, 2004, . . . plaintiff was reviewed on a major misconduct by Sgt. Johnson, on a fabricated misconduct written by [Loll] for out of place." Doc. Ent. 4 at 3 ¶ 16. Plaintiff requested a hearing, and it appears one was scheduled for October 28, 2004. He was placed on bond pending the hearing. Doc. Ent. 32-6 at 2.

Hearing Officer Gary Kuiper conducted a hearing on November 9, 2004, and found that plaintiff was not guilty of the October 24, 2004 misconduct. In so doing, the hearing officer found that "prisoner was working on his detail in the school at this time, so he had authorization to be out of his cell and coming into the unit at 1530. CO Marthrell and CO Gomez support prisoners' claim he was working, and his detail shows he should have been working at this time,

---

[16]Plaintiff claims that Keller signed the major misconduct as a witness, Doc. Ent. 4 at 4 ¶¶ 18-19; however, the listing of Keller as a witness appears to be in Loll's handwriting, Doc. Ent. 32-6 at 2.

so the unit officer's claim he had no authorization to be out of the unit is wrong."  Doc. Ent. 32-8.

On January 19, 2005, plaintiff filed a Step I grievance against Loll and Keller regarding the issuance of the misconduct tickets and Keller's witness statement.  Doc. Ent. 4 at 10 (TCF-05-01-00064-028b).  Specifically, he stated:

> I am filing this grievance against R.U.O. Carrill [Loll], and R.U.O. Keller, for 'Falsification of State Documents['] in violation of [MDOC] P. D. 02.03.100.  On 10-22-04 I filed a grievance against R.U.O. Carrill [Loll] for harassment for falsif[y]ing a minor misconduct against me.  In retaliation, R.U.O. Carrill [Loll] wrote a falsified major misconduct against me, and R.U.O. Keller wrote a false statement with the misconduct and signed the misconduct as a witness of the alleged violation.  On 11-9-04, I was heard on the misconduct an[d] found not guilty after the hearings officer found that I was not on the yard like alleged by R.U.O. Carrill [Loll], and Keller.  Per [MDOC] P.D. 02.03.100, the disciplinary action for falsification or altering documents, is discharge.  I am asking that this policy be enforced, pending civil action.

The grievance was rejected.[17]

**2.      Loll does not challenge plaintiff's First Amendment retaliation claim.  Plaintiff's remaining claim against Loll should be characterized as asserting a violation of the Fourteenth Amendment Due Process clause, and the Court should conclude that such claim does not survive summary judgment.**

---

[17]Plaintiff completed a Step II grievance appeal on January 25, 2005, stating:

> My grievance has been rejected without merit, and in conju[n]ction with the common practice staff has in covering staff misconduct.  Both RUO [Loll] and RUO Keller violated constitutional[ly] protected rights.  The hearing officer found that the misconduct was fabricated; and it was done to railroad me through the disciplinary process, actions have no[t] been taken to curb the actions of these officers.

He later completed a Step III grievance appeal, noting that he had "clearly explained the violation of staff and no[thing] has been done, except the attempt of staff to continue to cover the misconduct."  Doc. Ent. 4 at 12.  The Step III grievance appeal was denied on April 28, 2005, stating in part, "[t]he action of staff is in accordance with policy and procedure, as [plaintiff] may appeal the misconduct via the ADW of Housing."  Doc. Ent. 4 at 11.

Plaintiff claims his rights to equal protection and against retaliation "are not lost because he is a prisoner, and by fabr[i]cating a misconduct against plaintiff in retaliation because plaintiff filed a grievance and stated he would sue [Loll] for past actions did violate plaintiff's right to Equal Protection, and did constitute Retaliation." Doc. Ent. 4 at 4 ¶ 20.

### a. Loll does not challenge plaintiff's First Amendment retaliation claim.

Plaintiff claims that on October 22, 2004, he "was leaving the shower to return to his cell and made a request for the officer in the officer's station to open his cell door to lockdown. [Loll] went to the officer and told him not to open the plaintiff's door. At this time prisoners on the floor plaintiff was on [were] being allowed to enter their cells." Doc. Ent. 4 at 2 ¶ 10. Plaintiff claims he "was made to stand outside his cell door for approximately [fifteen (15)] minutes by [Loll] before she ordered the plaintiff to come to the officer's desk to sign a summary punishment." Doc. Ent. 4 at 2-3 ¶ 11. Plaintiff refused to sign the summary, "contesting the fact that he had not been locked down on time because [Loll] told the officer in the officer's station not to open plaintiff's cell door." Doc. Ent. 4 at 3 ¶ 12.[18] According to plaintiff, Loll "became very aggressive, and stated she would write the plaintiff a misconduct report. The plaintiff then stated he would sue the defendant if she fabricated a misconduct, and requested a grievance form. The defendant became very unstable and stated she would press her panic b[u]tton, and have the plaintiff taken to segregation for threatening behavior, and ordered plaintiff to his cell."

---

[18]As previously noted, MDOC PD 03.03.105 provides for the issuance of a Summary Disciplinary Action, ¶¶ D-E. In part, it provides that "[a]n employee who observes a minor misconduct violation may issue a Summary Disciplinary Action - Minor Rule Infraction (CSJ-275) if the prisoner signs a waiver of her/his right to a minor misconduct hearing and appeal." *Id*. ¶ D. It also provides that "[i]f a prisoner does not waiver his/her right to a hearing and appeal, the prisoner shall be charged only with a minor misconduct regardless of the charge or the prisoner's disciplinary record." *Id*. ¶ E.

Doc. Ent. 4 at 3 ¶ 13.  Plaintiff claims that Loll "stated to staff that she was going to lock plaintiff for threatening behavior.  Staff asked what plaintiff had done, and [Loll] stated [plaintiff] threatened to sue [her]. [Loll] was told she couldn't lock plaintiff up for threatening behavior for stating he would sue [her]."  Doc. Ent. 4 at 3 ¶ 14.  "The plaintiff filed a[] harassment grievance against [Loll] the following morning, and later that same day the plaintiff received a minor misconduct."  Doc. Ent. 4 at 3 ¶ 15.

With respect to the major misconduct ticket, plaintiff maintains that Loll "alleged that [he] was on Franklin Yard and had no authorization to be out of the unit or his cell and on the Yard."  Doc. Ent. 4 at 3 ¶ 17.  Plaintiff alleges that Loll's fabrication of the major misconduct ticket issued to plaintiff was done in retaliation for plaintiff filing a grievance and stating he would sue Loll for fabricating the October 22, 2004 minor misconduct.  Doc. Ent. 4 at 4 ¶¶ 19, 20.

Plaintiff retaliation claim against Loll is set forth in the first amended complaint.  Doc. Ent. 4 ¶¶ 20-23, 28.  Specifically, plaintiff alleges that Loll fabricated the October 24, 2007, major misconduct in retaliation for plaintiff's October 23, 2007, filing of a grievance and his October 22, 2007, statement that he would sue her "for fabricating a minor misconduct against him in a past situation."  Doc. Ent. 4 at 4 ¶ 21.  Plaintiff argues that Loll "is aware that the M.D.O.C.'s practice in conducting hearings falls far below standard, and that staff reports are considered credible 99% of the time."  Doc. Ent. 4 at 4 ¶ 22.  Plaintiff also claims that he suffered "great emotional stress, because plaintiff is a long term prisoner and is aware that the hearings officers take staff reports to be automatically credible in cases where there is evidence to show different, and because the plaintiff has received two 24-month flops, and was told by the

Parole Board member not to catch 'ONE MISCONDUCT' and then plaintiff was sent his second 24-month flop." Doc. Ent. 4 at 5 ¶ 23.

Originally, plaintiff alleged that Loll's actions "in fabricating a major misconduct against plaintiff for filing a grievance and stating he would sue for a past situation, constituted Retaliation in violation of plaintiff's First Amendment rights." Doc. Ent. 4 at 6 ¶ 28. Paragraph 28 has been amended twice. On March 23, 2006, it was amended to read: "The actions of [Loll] in fabricating a major misconduct against plaintiff for filing a grievance and stating he would sue, constituted retaliation and violation of plaintiff's right to equal protection, in violation of the First and Fourteenth Amendment of the United States Constitution." Doc. Ent. 15 ¶ 28. The latest version, filed on March 28, 2006, reads: "The actions of [Loll] in fabricating a misconduct against Plaintiff for stating he would sue and filing a grievance, constituted retaliation in violation of the First Amendment of the United States Constitution." Doc. Ent. 17 ¶ 28.

For this alleged violation of his First Amendment right against retaliation, plaintiff seeks $10,000 in compensatory damages from Loll "for emotional injuries sustained as a result of defendant falsif[y]ing a major misconduct against [him][.]" Doc. Ent. 4 at 7 ¶ B1. The Court should interpret Loll's July 30, 2007, motion as seeking summary judgment only as to the Fourteenth Amendment claim. Doc. Ent. 33 at 3. Therefore, regardless of its conclusion as to that claim, the Court should permit the First Amendment retaliation claim against Loll to go forward.[19]

---

[19]Keller maintains that "Booth did not set forth a claim for retaliation against Keller in his Amended Complaint." Doc. Ent. 32 at 3. Although ¶ 19 of the original complaint might be read as bringing his claims against both defendants based upon the rights to equal protection and against retaliation, this report interprets plaintiff's First Amendment retaliation claim as being limited to Loll and as not brought against Keller. *See* Doc. Ent. 4 ¶¶ 19, 21-23, 28.

**b.** **Plaintiff's Fourteenth Amendment claim(s) against Loll do not survive summary judgment.**

Plaintiff has also brought a Fourteenth Amendment equal protection claim against Loll for her issuance of the fabricated major misconduct ticket. Doc. Ent. 4 ¶ 29. Although this paragraph was later amended to apply to Keller, *see* Doc. Ent. 17, the first amended complaint provides that Loll's actions "in fabricating a Major Misconduct against plaintiff constituted a violation of the plaintiff's Equal Protection rights of the 14th Amendment." Doc. Ent. 4 at 6 ¶ 29.

For this alleged violation of his 14th Amendment right to equal protection of the laws, plaintiff seeks $10,000 in compensatory damages from Loll "for emotional injuries sustained as a result of defendant falsif[y]ing a major misconduct against [him][.]" Doc. Ent. 4 at 7 ¶ B2.

**i.** Loll argues that "[p]risoners are not members of a protected class[,]" and "Booth has not alleged that Loll violated a fundamental right." Therefore, Loll argues, the Court should apply rational basis scrutiny to plaintiff's Fourteenth Amendment equal protection claim against Loll.[20] More specifically, Loll argues that plaintiff does not have a fundamental right to be free from

---

[20]As the D. C. Circuit has succinctly stated, "[s]trict scrutiny demands that classifications be narrowly targeted to serve compelling state interests and is reserved for suspect classifications or classifications that burden fundamental rights. Intermediate scrutiny requires that classifications be substantially related to important governmental interests; it is applied to so-called 'quasi-suspect' classifications. Under rational basis review, a classification need only be rationally related to a legitimate governmental interest." *Hedgepeth ex rel. Hedgepeth v. Washington Metropolitan Area Transit Authority*, 386 F.3d 1148, 1153 (D. C. Cir. 2004) (referencing *Kimel v. Florida Board of Regents*, 528 U.S. 62, 83-84 (2000)).

"Unless a statute employs a classification that is inherently invidious or that impinges on fundamental rights, areas in which the judiciary then has a duty to intervene in the democratic process, the Court properly exercises only a limited review power over Congress, the appropriate representative body through which the public makes democratic choices among alternative solutions to social and economic problems." *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981). "At the minimum level, this Court consistently has required that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker*, 450 U.S. at 230.

misconduct violations and contends that "[c]orrections officers must have the ability to write major misconduct violations as a means to maintain discipline." Furthermore, citing *Chapman v. City of Detroit*, 808 F.2d 459 (6ᵗʰ Cir. 1986),[21] Loll contends that "Booth's conclusory allegations that Loll's actions amounted to a due process violation are insufficient to set forth a claim under § 1983." Doc. Ent. 33 at 4. Loll requests that Court grant her motion for summary judgment and dismiss with prejudice plaintiff's Fourteenth Amendment claim against her. Doc. Ent. 33 at 5.

In response, plaintiff contends that the October 22, 2004 minor misconduct ticket Loll issued was fabricated. Plaintiff also contends that the October 24, 2004 major misconduct ticket was fabricated, was issued in retaliation (presumably for plaintiff filing the October 23ʳᵈ grievance [00950]) and was supported by Keller's fabricated witness statement. Doc. Ent. 36 at 2. In support of his due process claim, plaintiff cites *Napue v. Illinois*, 360 U.S. 264 (1959) and *Miller v. Pate*, 386 U.S. 1 (1967) and argues that he clearly possesses "a [liberty interest] in not having false statements, reports and evidence presented at such official proceedings like a prison hearing for alleged misconduct."[22] Therefore, plaintiff contends, Loll and Keller's actions are

---

[21]"It is not enough for a complaint under § 1983 to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6ᵗʰ Cir. 1986) (citing *Place v. Shepherd*, 446 F.2d 1239 (6th Cir.1971)).

[22]*Napue* and *Miller* are distinguishable, because each involved the use of false evidence to secure a criminal conviction. *Napue v. Illinois*, 360 U.S. 264, 272 (1959) ("the false testimony used by the State in securing the conviction of petitioner may have had an effect on the outcome of the trial."); *Miller v. Pate*, 386 U.S. 1, 7 (1967) ("More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.") (citing *Mooney v. Holohan*, 294 U.S. 103 (1935)).

criminal under 18 U.S.C. §§ 241, 242 ("Deprivation of rights under color of law") and 1001. Doc. Ent. 36 at 3.[23]

ii.      Reading plaintiff's complaint along with his response to Loll's motion for summary judgment, the Court should construe plaintiff's "equal protection" claim as a due process claim. Plaintiff's claim against Loll alleges to be one brought under the equal protection clause of the Fourteenth Amendment, but it simply complains that Loll fabricated a major misconduct against plaintiff in violation of the Equal Protection clause of the Fourteenth Amendment. Doc. Ent. 4 at 6 ¶ 29. Plaintiff does not say, for example, that he is being treated differently from Caucasian prisoners, female prisoners or another class of prisoners. Furthermore, plaintiff's response to Loll's dispositive motion not only lists the claim as one arising under due process but also refers to an arbitrary deprivation of a liberty interest. Doc. Ent. 36 at 3.

iii.      The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The Fourteenth Amendment does not protect against all of the State's deprivations of life, liberty, or property. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981).[24] It

_____

[23]To the extent that plaintiff seeks a declaration that defendants have violated various criminal statutes, such declaratory relief is barred because plaintiff has no authority to initiate criminal proceedings in his own name. *See Violett v. Pearson*, No. 97-6142, 1998 WL 381640, at *2 (6th Cir. June 23, 1998) (citing *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam)) ("The district court properly dismissed [the civil rights plaintiff's] claims that the defendants engaged in criminal conduct because private citizens have no authority to initiate federal prosecution of the defendants for their alleged unlawful acts."); *Keenan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964) ("Not only are we unaware of any authority for permitting a private individual to initiate a criminal prosecution in his own name . . ., but also to sanction such a procedure would be to provide a means to circumvent the legal safeguards provided for persons accused of crime[.]").

[24]In *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme Court reconsidered its statement in *Parratt* that "'the alleged loss, even though negligently caused, amounted to a deprivation.'" *Daniels*, 474 U.S. at 328 (citing *Parratt*, 451 U.S. at 536-537). The Court held that "the Due

16

protects against only those deprivations of life, liberty, or property that are "without due process of law." *Id.*

"[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "The touchstone of due process is protection of the individual against arbitrary action of government, *Dent v. West Virginia*, 129 U.S. 114, 123 (1889)." *Wolff*, 418 U.S. at 558. *See also Sandin v. Conner*, 515 U.S. 472, 487 (1995) ("neither the Hawaii prison regulation in question, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)]. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life.").

**iv.** To the extent plaintiff attempts to assert a Fourteenth Amendment procedural due process claim against Loll based upon the alleged fabrication of the misconduct tickets,[25] it does not survive summary judgment. Even assuming that defendants' procedures were deficient, or were arbitrarily ignored, plaintiff cannot succeed because he has not been deprived of any "liberty" interest protected by the Due Process Clause. The Supreme Court's decision in *Sandin v. Connor*, 515 U.S. 472 (1995), is directly on point. In *Sandin*, a prisoner brought a procedural

---

Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986)

[25]In his April 28, 2006, deposition, Rodgerick Booth testified that Loll attached a statement to the minor misconduct and that he was not given a copy of that statement. Doc. Ent. 32-4 at 3-4 (pgs.17-18). It does not appear that plaintiff's complaint is based upon Loll's failure to provide him with a copy of this statement.

due process claim alleging that the imposition of disciplinary segregation against him in connection with misconduct tickets violated his due process rights because the prison officials failed to follow state mandated procedures. *See id*. at 475. The Supreme Court rejected the prisoner's claim.

The Court reasoned that, in the prison context, "liberty" interests may arise in one of two ways. First, a liberty interest may arise by virtue of the Due Process Clause itself, where the confinement imposed is "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime[.]" *Id*. at 479 n.4 (discussing *Vitek v. Jones*, 445 U.S. 480 (1980) (transfer to state mental hospital implicates liberty interest) and *Washington v. Harper*, 494 U.S. 210 (1990) (involuntary administration of psychotropic drugs implicates liberty interests)). Absent this type of qualitative change in punishment, a liberty interest may arise under state law. However, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. Thus, under *Sandin* a plaintiff must show both (1) that a state statute or regulation creates a liberty interest in mandatory terms; and (2) that he suffered a restraint which imposed an atypical and significant hardship. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *see also*, *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

Plaintiff has not suffered a restraint which imposed an atypical and significant hardship. The Sixth Circuit has provided that "[a] Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with

which the state has interfered." *McMillan v. Fielding*, 136 Fed.Appx. 818, 820 (6th Cir. 2005) (citing cases). "A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *McMillan*, 136 Fed.Appx. at 820 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

It is not clear what disciplinary sanction plaintiff received upon being found guilty of the minor misconduct. Among the hearing officer's choices are toplock, loss of privileges, assignment of extra duty, counseling and reprimand, and restitution. Although plaintiff was found not guilty of the major misconduct, the potential sanctions he would have faced upon a guilty finding are detention, toplock, loss of privileges, assignment of extra duty, and restitution. *See* MDOC PD 03.03.105D ("Disciplinary Sanctions"). Whichever of these punishments was imposed, the increase of one's security level does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 486 ("We hold that Connor's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); *Rimmer-Bey*, 62 F.3d at 791; *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997)) ("administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration."). Nor does a temporary loss of privileges. *See, e.g.*, *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) (denial of access to privileges such as social and rehabilitative activities not an atypical and significant hardship); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (loss of

commissary, recreation, package, and telephone privileges not an atypical and significant hardship); *Christianson v. Clarke*, 932 F. Supp. 1178, 1182 (D. Neb. 1996) (temporary restriction of privileges such as free access to law library, circulating library, yard, and central dining area not atypical and significant hardship). Nor does the imposition of assignment of extra duty. *Samford v. Staples*, 249 Fed.Appx. 1001, *1004 (5th Cir. 2007) ("The disciplinary sanctions included curtailed recreation and commissary privileges, assignment of extra duty, temporary solitary confinement, and a reduction in his classification status. Because the sanctions imposed upon Samford did not represent atypical or significant hardships, they did not infringe upon a constitutionally protected liberty interest and the disciplinary hearings that resulted in those sanctions did not implicate the Due Process Clause.").

Furthermore, "under *Sandin* a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence and there is no evidence here that the segregation will impact plaintiff's sentence." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). Plaintiff's earliest release date was September 25, 2002, and his maximum release date is August 30, 2019.[26] He does not allege that the length of his confinement/sentence will be increased as a result of these hearings, other than to suggest that his receipt of a misconduct effects his chances for parole. Doc. Ent. 4 at 5 ¶ 23. In that regard, the Supreme Court has ruled that, in general, there is no reasonable entitlement to due process that is created because a state provides for the mere possibility of parole. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7-8 (1979). *See also Jones v. Irvin*, No. 4:06-CV-10, 2006

---

[26]*See* www.michigan.gov/corrections, "Offender Search".

WL 461310, *5 (W.D. Mich. Feb. 24, 2006) ("Michigan's parole scheme creates no liberty interest in being released on parole.").

Therefore, plaintiff has not shown that a liberty interest was at stake.[27]

**3.    Plaintiff's claim against Keller should be characterized as asserting a violation of the Fourteenth Amendment Due Process clause, and the Court should conclude that such claim does not survive summary judgment.**

**a.**    Plaintiff alleges that Keller wrote "a fabricated statement in support of a fabricated [major] misconduct[.]" Doc. Ent. 4 at 4 ¶ 19. Plaintiff has set forth what he deems an "equal protection" claim against Keller. Doc. Ent. 4 ¶¶ 24-27, 30. Specifically, plaintiff alleges that Keller "deliberately made a false statement with the [October 24, 2007] major misconduct as a witness to ensure that plaintiff would be found guilty, and knew that if it was just the plaintiff's word against two staff members, the plaintiff would a[l]most surely be found guilty of the major misconduct." Doc. Ent. 4 at 5 ¶ 24. Plaintiff also alleges that Keller "made a conscious effort to help defendant RUO Carrill [Loll] railroad plaintiff through the prison disciplinary system by

---

[27]It appears that plaintiff is challenging the validity of his minor misconduct conviction. Plaintiff testified that he did not get a copy of Loll's statement attached to the minor misconduct ticket. He also testified that a male RUM heard him on the minor misconduct; the RUM stated, "[t]his sounds personal[;]" the RUM did not give plaintiff a copy of Loll's statement, but the RUM read the statement to plaintiff and ultimately found him guilty of the minor misconduct ticket. Doc. Ent. 32-4 at 4 (pp. 18-19).

This Court has previously stated that "[e]ven if Plaintiff could establish a protected liberty interest, the requirements of due process are satisfied when 'some evidence' supports a disciplinary official's decision." *Taylor v. Heisler*, No. 05-CV-60281-AA, 2006 WL 47435, *2 (E.D. Mich.,2006) (O'Meara, J.) (citing *Superintendent, Massachusetts Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985)). However, I cannot assess plaintiff's minor misconduct ticket in this regard, because the record copy of Loll's description of the violation underlying the minor misconduct ticket is not legible and does not contain the RUM's findings. Doc. Ent. 32-3 at 2 (Form CSJ-240C).

Even though I cannot assess the RUM's hearing report, this report concludes that plaintiff has not shown that a liberty interest was at stake. Therefore, he is not entitled to relief under the due process clause of the Fourteenth Amendment with respect to his conviction on the October 22nd minor misconduct ticket.

stating he witnessed the violation in the statement he wrote in conju[n]ction with the fabricated [major] misconduct, when defendant RUO Keller knew he did not witness any violation." Doc. Ent. 4 at 5 ¶ 25.

Plaintiff claims that he was clearly treated differently when Keller alleged to have witnessed the violation and fabricated his witness statement, in violation of MDOC PD 03.03.105 ["Prisoner Discipline"] which "clearly states that misconducts are written when staff observes a violation[.]" Doc. Ent. 4 at 5 ¶ 26.[28] According to plaintiff, "Keller had no rational reason for this dissimilar treatment, in assisting another staff member in fabricating a false misconduct, when policy clearly states the criteria for the treatment of all prisoners concerning misconduct reports." Doc. Ent. 4 at 5 ¶ 27.

Within his claims for relief, plaintiff alleges that Keller's actions "in fabricating a false witness statement in conjunction with the fabricated [major] misconduct of defendant RUO [Loll] constituted a violation of plaintiff's Equal Protection rights in violation of the 14th Amendment." Doc. Ent. 4 at 6 ¶ 30. Furthermore, paragraph 29, originally attributed to Loll, Doc. Ent. 4 at 6 ¶ 29, has been amended as follows: "The actions of []Keller in fabricating a witness statement in conjunction with a false misconduct, constituted a violation of Plaintiff's Equal Protection rights, in violation of the Fourteenth Amendment of the United States Constitution." Doc. Ent. 17 ¶ 29.

---

[28]MDOC PD 03.03.105 ("Prisoner Discipline"), effective 01/01/2007. Although a Summary Disciplinary Action - Minor Rule Infraction (CSJ-275) and a Minor Misconduct Violation and Hearing Report (CSJ-240C) may be issued by an employee who observes the violation, a Major Misconduct Report (CSJ-240A) "may be written by any Department staff person or person under contract with the Department who has knowledge that a misconduct has occurred." *Id.* ¶¶ D, F, K.

For this alleged violation of his 14th Amendment right to equal protection of the laws, plaintiff seeks $10,000 in compensatory damages from Keller "for emotional injuries sustained as a result of defendant falsif[y]ing a witness statement[.]" Doc. Ent. 4 at 7 ¶ B3.

**b.**     As was the case with Loll, Keller argues that "[p]risoners are not members of a protected class[;]"[29] "Booth has not alleged that Keller violated a fundamental right[;]" and "[u]nder rational basis scrutiny, Booth's claim against Keller should be dismissed." Keller argues, his "actions are subject to rational basis scrutiny unless Booth can show that he has a fundamental right to be free from misconduct violations." Specifically, Keller argues that plaintiff does not have a fundamental right to be free from misconduct violations. Keller claims that his only involvement "was to write a statement indicating that he did not see Booth present in the unit and that Booth should not have been out of his cell. His statement was true. Booth was not in the unit." Doc. Ent. 32 at 4.

Citing his May 31, 2007, affidavit, Keller contends that he "did not know on October 24, 2004, that Booth did not have a detail authorizing his absence from the unit." Keller further states that he "simply submitted a statement indicating his observations." Keller also contends that "[o]n October 24, 2004, [he] did not have any knowledge of the incident which occurred on October 22, 2004, between Booth and Loll." Keller contends that plaintiff "has not, and cannot, make any showing that Keller discriminated against him unfairly simply by writing a factual statement in support of a major misconduct violation." Furthermore, citing *Chapman*, Keller

---

[29]"Inmates are not a suspect class." *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (citing *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir.1997)).

argues "Booth's conclusory allegations that Keller's actions violated the Equal Protection Clause are insufficient to set forth a claim under § 1983." Doc. Ent. 32 at 5.

In response, plaintiff contends that Keller "conspired with [Loll] to have plaintiff punished for a false misconduct, by filing a witness statement to [the October 24th] false retaliatory misconduct." Doc. Ent. 35 at 2. In support of his due process and equal protection claim, plaintiff cites *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996)[30] and states that he "was clearly denied due process and equal protection when he was treated differently than other prisoners when []Keller, colluded with defendant Loll, to retaliate against plaintiff." Doc. Ent. 35 at 3. Plaintiff relies upon the Supreme Court of the United States' decisions in *Napue v. Illinois*, 360 U.S. 264 (1959) and *Miller v. Pate*, 386 U.S. 1 (1967) in support of his statement that he clearly "possesses a [liberty interest] in not having false statements, reports and evidence presented at such official proceedings." Doc. Ent. 35 at 3.

According to plaintiff, Keller "clearly presented false evidence at plaintiff's hearing alleging that plaintiff was not suppose[d] to be out of his cell. The defendant had a duty pursuant to [MDOC] P. D. 03.03.105 ["Prisoner Discipline"], to check the log book in the unit or question plaintiff on his whereabouts, and did neither." Doc. Ent. 35 at 3-4. Plaintiff contends that Keller's statement that he has "no knowledge of Plaintiff having had a detail which would have permitted Plaintiff to have out of cell or out of unit movement[,]" Doc. Ent. 32-9 at 2 ¶ 3, proves "there was clearly no [rational basis] to assume because plaintiff was coming in with the

---

[30]"Where, as here, plaintiffs do not allege that they are members of a suspect class, we review their claims under a rational basis standard." *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996). "To prevail in their claims, the Inmates must prove that '(1) persons who are similarly situated are treated differently by the government, and (2) [that] the government [has failed] to provide a rational basis for the dissimilar treatment.'" *Hosna*, 80 F.3d at 304 (citations omitted).

yard prisoners that he was on the yard without investigation of any kind." Plaintiff argues that "[w]ithout taking the proper steps to investigate this matter, it can be clearly inferred that []Keller, intended to help defendant Loll, establish the base for a guilty finding, and these actions are clear and established federal crimes under [18 U.S.C. §§] 241 ['Conspiracy against rights'] and 1001 ['Statements or entries generally']." Doc. Ent. 35 at 4.

**c.** After reading plaintiff's complaint along with his response to the motion for summary judgment, the Court should construe plaintiff's "equal protection" claim as a due process claim. Plaintiff relies upon *Hosna*, a case wherein the plaintiffs, who were housed in administrative segregation, sought "damages and injunctive relief for alleged equal protection violations because they enjoyed fewer privileges than inmates housed in protective custody[,]" and the court reviewed plaintiffs' Equal Protection claims under the rational basis standard. *Hosna*, 80 F.3d at 301, 305. Although plaintiff states that he is being treated differently than other prisoners (Doc. Ent. 4 at 5 ¶ 26 and Doc. Ent. 35 at 3), it is a conclusory statement. He does not say, for example, that he is being treated differently from another class of prisoners. Instead, plaintiff is alleging that Keller colluded with Loll to retaliate against plaintiff and in so doing violated MDOC PD 03.03.105 ("Prisoner Discipline"). The characterization of plaintiff's claim against Keller as one alleging a violation of his right to due process is supported by plaintiff's use of the words "liberty interest" in his response. Doc. Ent. 35 at 3.[31]

**d.** That being said, it is appropriate to consider whether plaintiff was deprived of a liberty interest without due process of law. As previously noted, plaintiff claims that the tickets were

---

[31]It is also worth noting that the policy statement of MDOC PD 03.03.105, effective 01/01/2007, states that "[d]isciplinary sanctions shall be imposed against prisoners for rule violations in accordance with due process requirements."

written to "railroad" him through the disciplinary process.  Doc. Ent. 4 at 4-5 ¶¶ 21, 25.  During

his April 28, 2006, deposition, Rodgerick Booth testified that he did not recall seeing Keller

during the October 22, 2004, incident.  He also testified that he did not recall having problems

with either defendant between October 22 and October 24.  Doc. Ent. 32-4 at 4 (p.20).  He also

testified that "Officer Keller was in the bubble at that particular time when I came in the unit

because I remember looking at his back because he was facing, you know, towards the unit.  You

know, his face was towards the inner parts of the unit so I remember looking in the bubble and

seeing him, you know, standing up."  Doc. Ent. 32-4 at 5 (p.27).  Keller's May 31, 2007 affidavit

states that he has "no knowledge of Plaintiff having had a detail which would have permitted

Plaintiff to have out of cell or out of unit movement[,]" and "no knowledge of a minor

misconduct written by RUO C. Loll on 10/22/04."  Doc. Ent. 32-9 ¶¶ 3-4.

　　　　To the extent plaintiff asserts a Fourteenth Amendment procedural due process claim

against Keller (for example, on the basis that the MDOC PD requires that the ticket is be issued

by someone who observed the violation or on the basis that Keller provided a fabricated witness

statement to the hearing officer), it does not survive summary judgment.  As stated in Section

II.D.2.b.vi, "[a] prison inmate has no constitutionally guaranteed immunity from being falsely or

wrongly accused of conduct which may result in the deprivation of a protected liberty interest."

*Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *accord Riley v. Church*, 874 F. Supp.

765, 768 (E.D. Mich. 1994) (Gadola, J.), *aff'd*, Nos. 95-1192, 95-1193, 81 F.3d 161 (6th Cir.

1996).  Rather, plaintiff merely has a right to due process before being disciplined with respect to

such charges.

Plaintiff received a hearing on his major misconduct ticket. He was present, he was given an opportunity to be heard and he was thereafter found not guilty. Doc. Ent. 32-8 at 2. Also, he was placed on bond pending the hearing. Doc. Ent. 32-6 at 2. Therefore, he has not shown that the acts of which he complains impose an atypical and significant hardship in relation to the ordinary incidents of prison life.

Accordingly, the Court should grant defendant Keller's motion for summary judgment with respect to plaintiff's due process claim(s) against him.[32]

**4.      Plaintiff has not stated a conspiracy claim under 42 U.S.C. § 1985.**

In his amendments to the complaints, plaintiff characterizes his claims as being brought pursuant to 42 U.S.C. § 1983, as well as 42 U.S.C. § 1985. Doc. Ent. 15 at 1, Doc. Ent. 17 at 1.

---

[32]To the extent plaintiff attempts to assert a substantive due process claim against either Loll or Keller, such as the provision of fabricated information the hearing officer, it does not survive summary judgment. The fundamental rights protected by the substantive component of the Fourteenth Amendment's due process clause include "'the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.'" *Doe v. Michigan Department of State Police*, 490 F.3d 491 (6th Cir. July 18, 2007) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Plaintiff's complaint regarding the issuance of his major and minor misconduct tickets does not implicate these fundamental rights.

Furthermore, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Plaintiff's retaliation claim against Loll is governed by the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 386-388 (1999). *See also Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 46 (1st Cir. 1992) ("[t]o the extent [appellant's] substantive due process claim is based on the alleged retaliation for his political views, it is coextensive with his First Amendment claim."); *Oppenheim v. Gutteridge*, 225 F.Supp.2d 185, 188 n.5 (D. Conn. 2002) ("To the extent plaintiff's due process claim is based on retaliation for her complaint to the union, it adds nothing to her claim based on the First Amendment.") (citing *Albright*, 510 U.S. at 273). *See also Chicago School Reform Bd. of Trustees v. Substance, Inc.*, 79 F.Supp.2d 919, 937 (N.D. Ill. 2000) (citing *Thaddeus-X* and *Nestor*).

In his response to Keller's motion for summary judgment, plaintiff alleges that Keller conspired with Loll.  Doc. Ent. 35 at 2.  To the extent plaintiff meant to raise a conspiracy claim against Keller for the alleged collusion with or assistance to Loll (Doc. Ent. 4 at 5 ¶ 25, Doc. Ent. 35 at 3-4), this report will address such a claim.

42 U.S.C. § 1985 governs "Conspiracy to interfere with civil rights".  With regard to "depriving persons of rights or privileges", the statute provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  "[C]onclusory allegations are not sufficient to state a claim under 42 U.S.C. §§ 1985(3)[.]"  *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971).  "[W]e are required to accept only well pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts."  *Blackburn*, 443 F.2d at 124 (internal citations omitted).

"[T]o make out a violation of § 1985(3) . . . the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any

person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-829 (1983).[33]

As to the second element, the Supreme Court has stated that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (citing *Hicks v. Resolution Trust Corporation*, 970 F.2d 378, 382 (7th Cir.1992)). *See also Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973) ("§ 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)."); *O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1145 (6th Cir. 1973) ("It is clear from the abovequoted language, however, that the requisite invidiously discriminatory intent must be class-based.").

Treating plaintiff's conspiracy claim as brought pursuant to 42 U.S.C. § 1985(3), Doc. Ent. 17 at 1, plaintiff has not alleged that the motive for conspiracy was a class based animus.

---

[33]"[C]laims under § 1985(3), unlike those under 42 U.S.C. § 1983, need not allege that the deprivation occurred at the hands of the state." *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 225 (6th Cir. 1991) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 99 (1971); *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 832 (1983)). *See also O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1144 (6th Cir. 1973).

He apparently suggests that he was being treated differently from other prisoners at TCF, not, for example, that he was among a class of TCF prisoners "composed of inmates . . . who aggressively employed both federal litigation and internal prison grievance procedures to enforce their constitutional rights[.]" *In re Jackson Lockdown/MCO Cases*, 568 F.Supp. 869, 883 (E. D. Mich. 1983) (Cohn, J.) (concluding prisoner stated a § 1983(3) claim where he had not "alleged that MCO's[34] actions were directed against him simply as a member of the class of prisoners generally but rather 'as a member of a class of inmates at the SPSM'.")[35] (internal footnote omitted). Therefore, the Court should dismiss plaintiff's conspiracy claim pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829

---

[34]Michigan Corrections Organization

[35]State Prison of Southern Michigan

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/28/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on February 28, 2008.

s/Eddrey Butts
Case Manager